IN THE UNITED STATES DISTRICT COURT

DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KIMBERLY SUE MEADOWS,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER**<br><br>Case No. 2:17-cr-749<br><br>Judge Clark Waddoups |

This matter is before the court on a Motion to Suppress filed by defendant Kimberly Sue Meadows. Ms. Meadows' vehicle has a third brake light on the interior side of the rear window. The rear window is tinted, which results in the brake light being tinted as well. A Utah Highway Patrol Trooper stopped Ms. Meadows on the basis that a tinted brake light constitutes an equipment violation. During the stop, the trooper found methamphetamine, cocaine, and drug paraphernalia. Ms. Meadows moves to suppress this evidence, and any statements she made related to the stop, on the ground the initial stop was unlawful. For the reasons stated below, the court denies the Motion to Suppress (ECF No. 19).

## FACTUAL BACKGROUND

On December 4, 2017, Ms. Meadows was driving on I-70 when Trooper Christopher Terry observed her 1993 sedan. The sedan had a tinted rear window, with a third brake light on the interior side of that window. Trooper Terry stopped Ms. Meadows on the basis that a tinted brake light is an equipment violation under "Windows Section 9, subsection 2(f) of the Utah

Safety Inspection Manual." He then issued a warning citation for operating an unsafe and improperly equipped vehicle in violation of Section 41-6A-1601(1) of the Utah Code. *See* Warning Citation (Gov't Ex. 3).

During the stop, Trooper Terry noted that Ms. Meadows' vehicle was registered in California, but she lived in Colorado. When Ms. Meadows gave other conflicting information, Trooper Terry became suspicious of criminal activity and deployed his Police Service Dog to conduct an exterior sniff of the vehicle. The dog alerted, and Trooper Terry found 50 grams or more of methamphetamine, 500 grams or more of cocaine, and drug paraphernalia. Ms. Meadows moves to suppress this evidence, along with all of her statements, on the ground that the initial stop was illegal.

The court held an evidentiary hearing on March 1, 2018, during which a video recording was played showing the initial stop. The recording showed that the brake light was visible and functioning at the time of the stop, but it was covered by the tinted rear window. The facts of the initial stop are not in dispute, and Ms. Meadows does not challenge any other portion of the stop. The parties agree the outcome of this motion will turn on the court's interpretation of the law.

## PROCEDURAL BACKGROUND

At the March 1, 2018 hearing, the court set a briefing schedule and time for oral argument. Since that time, the issues in the case have been evolving. In her first memorandum, Ms. Meadows made the following arguments: "(1) she did not violate any Utah traffic laws; (2) the rules and regulations governing safety inspections are categorically different from traffic laws and unenforceable as such; and (3) Trooper Terry made an unreasonable mistake of law." Memo in Supp., at 3 (ECF No. 27). With respect to her first argument, Ms. Meadows contends

she did not violate Section 41-6a-1601(1) because her vehicle was not in an unsafe or improper condition at the time of the stop. As to her second argument, Ms. Meadows contends *United States v. Rosvall*, 651 F. Supp. 2d 1274 (D. Utah 2009) precludes stops for violations under the Utah Vehicle Safety Inspection Manual. Finally, Ms. Meadows contends Trooper Terry did not make a reasonable mistake of law because Section 41-6a-1601, as clarified by Section 41-6a-1604, is unambiguous and Trooper Terry should have known a safety inspection violation cannot be the ground for a traffic stop.

At oral argument on August 16, 2018, Ms. Meadows then asserted an additional argument that Utah had decriminalized its traffic code, and therefore the stop could not be based upon an equipment violation. Because the issue was newly raised, the court allowed time for supplemental briefing.

In her supplemental memorandum, Ms. Meadows made two arguments. First, she made a "facial challenge to Utah's statutory scheme" because "it allows an officer to 'stop, inspect, and test' a motor vehicle for a non-criminal offense." Supp. Memo in Support of Mot. to Suppress, at 1 (ECF No. 37). Ms. Meadows asserts that, effective May 2017, infractions under Section 41-6a-1601 were decriminalized by the Utah Legislature to something less than an infraction. And, any stop based on something less than an infraction upsets the proper balance for search and seizures. Second, Ms. Meadows argued that stopping an out-of-state vehicle for a violation of a Utah equipment law may also violate the Commerce Clause.

Following briefing, the court set final oral argument for October 25, 2018. Shortly before the hearing, defense counsel notified the court and government that Ms. Meadows also challenged the validity of Utah's vehicle safety inspection rules on the basis that they had not

been passed in accordance with the requirements of Utah Code § 63G-3-201(5)(a). In particular, Ms. Meadows asserted the safety inspection rules are invalid because they fail to state the penalty for a violation of the rules as required by law. Initially, the government reserved the right to brief the newly raised issue, but after oral argument, it submitted the matter to the court. The court has taken each of the arguments under advisement and now issues this decision.

## ANALYSIS

I. INTERPLAY BETWEEN UTAH STATUTORY AND ADMINISTRATION LAW

    A.     Utah's Traffic Code

Ms. Meadows contends she did not violate the Utah Traffic Code because she operated her vehicle in compliance with Section 41-6a-1601(1)(a) of the Utah Code. The relevant provisions of that Section are as follows:

> (1)(a) A person may not operate or move . . . on a highway a vehicle . . . which:
>   . . .
>   (ii) does not contain those parts or is not at all times equipped with lamps and other equipment in proper condition and adjustment as required *in this chapter*; [or]
>
>   (iii) is equipped in any manner in violation *of this chapter* . . . .

Utah Code Ann. § 41-6a-1601(1)(a) (emphasis added). The chapter at issue is Chapter 6a, which is entitled "Traffic Code." Part 16 pertains to Vehicle Equipment and Section 1601 *et seq.* refers to particular equipment requirements. Ms. Meadows asserts Section 41-6a-1604 sets the conditions for brake lights and nothing in that section prohibits a tint over a third brake light. It is correct that tinted brake lights are not expressly addressed in that section. The section does require, however, that each stop lamp "comply with the requirements and limitations established under Section 41-6a-1601." *Id.* § 41-6a-1604(4)(a) (emphasis added).

4

While Section 41-6a-1601 also does not specifically address tinting over a third brake light, it does direct the following:

> In accordance with Title 63G, Chapter 3, Utah Administrative Rulemaking Act, and in coordination with the rules made under Section 53-8-204, the department shall *make rules setting minimum standards covering the design, construction, condition, and operation of vehicle equipment* for safely operating a motor vehicle on the highway as required under this part.

*Id.* § 41-6a-1601(2)(a) (emphasis added). The reference to "the department" means the Department of Public Safety (the "Department"). *Id.* § 41-6a-102(10). The Legislature therefore delegated authority to the Department to make specific rules for equipment standards and any such rules are established pursuant to the legislative directive under Subsection 1601(2)(a).

Moreover, within the Department of Public Safety, the Utah Legislature created the Utah Highway Patrol Division (the "Division"), and within that Division is the Motor Vehicle Safety Inspection Advisory Council. *See* Utah Code Ann. §§ 53-1-104(2)(b), 53-1-104(3)(h), 53-8-103(1), 53-8-203(1). The Legislature directed the Division to make rules,

> (a) setting minimum standards covering the design, construction, condition, and operation of motor vehicle equipment for safely operating a motor vehicle on the highway;
>
> (b) establishing motor vehicle safety inspection procedures to ensure a motor vehicle can be operated safely;
>
> (c) establishing safety inspection station building, equipment, and personnel requirements necessary to qualify to perform safety inspections; [and]
>
> (d) establishing age, training, examination, and renewal requirements to qualify for a safety inspector certificate . . . .

Utah Code Ann. § 53-8-204(5)(a)-(d). Thus, the Division was directed not only to promulgate rules governing vehicle equipment standards, but also to set forth the standards for motor vehicle safety inspections and the qualifications necessary to perform safety inspections.

5

Title R714 of the Utah Administrative Code was developed pursuant to these legislative directives. Section R714-160-1 states, "[t]his rule is authorized by Subsections 53-8-204(5) and 41-6a-1601(2)." Section R714-160-2 states, "[t]he purpose of this rule is to set minimum equipment standards governing passenger vehicle and light truck inspections in accordance with Sections 53-8-204 and 41-6a-1601." Therefore, R714 makes clear that it was promulgated pursuant to legislative authority, which means the rule necessarily serves the dual purpose established by the Legislature. First, it sets forth the minimum equipment standards for safe operation of vehicles. Second, those equipment standards are to govern safety inspections for certain vehicles.

Although R714 serves a dual purpose, it does not separate out equipment standards and safety inspection standards because the standards are the same.[1] Thus, inspectors are directed to fail vehicles that do not meet certain equipment standards because those standards are the minimum level at which a vehicle may be operated on Utah roads. Within this context, it is notable that R714-160-13(8) directs inspectors to fail a vehicle when "a stop lamp is painted or tinted." Utah Admin. Code R714-160-13(8)(a)(i)(B). Thus, any passenger vehicle that has a tinted brake light does not have "equipment in proper condition," nor is it equipped in a proper manner as required by Section 41-6a-1601(1)(a) of Utah's Traffic Code. Accordingly, the court concludes Ms. Meadows did violate Utah's traffic laws.

---

[1] This is not to say that R714 and the Utah Safety Inspection Manual are identical. The Manual is written in a more user-friendly manner, but its substance is the same as the Administrative Code. *Cf* Utah Admin. Code R714-160-13(8)(a)(i)(B) (Gov't Ex. 4) *with* Utah Safety Inspection Manual, § 7, ¶ H(5)(a)(iv) (Gov't Ex. 2) (indicating any passenger vehicle with a tinted brake lights fails equipment standards).

### B. Utah Safety Inspection Manual

Ms. Meadows further contends stopping her for a violation of "Windows Section 9, subsection 2(f) of the Utah Safety Inspection Manual"[2] was unlawful because the case of *United States v. Rosvall*, 651 F. Supp. 2d 1274 (D. Utah 2009) prohibits traffic stops for violations of the Utah Safety Inspection Manual (the "Manual"). In *Rosvall*, an officer stopped a vehicle because the taillight had a broken lens and there was a piece of red tape over it. *Rosvall*, 651 F. Supp. 2d at 1275. The tape, however, "was similar to the color of the lens and was illuminated." *Id.* (quotations and citation omitted). Judge Tena Campbell reviewed federal equipment standards and the Utah Administrative Code and found that neither addressed the issue before the court. *Id.* at 1277. Although the Vehicle Inspection Manual specified the taillight would fail an inspection, Judge Campbell concluded that failing "to pass a state safety inspection[] is a different matter than whether the condition of a taillight violates Utah law." *Id.* at 1278. She then concluded that drivers are not required to be "in full compliance with all standards in the safety inspection manual" because such a requirement "would place onerous and unrealistic duties on drivers and car owners." *Id.*

It is unclear why the Utah Administrative Code did not match the provisions of the Utah

---

[2] Trooper Terry cited "Windows Section 9, subsection 2(f) of the Utah Safety Inspection Manual" as the equipment provision that Ms. Meadows violated. The version of the Manual provided as Government's Exhibit 2 does not have that particular subsection. The exhibit does have Section 9 – Vehicle Windows, and Subsection F(1)(a)(iv) directs that a vehicle must fail inspection when a "[c]enter high-mounted brake light is covered with aftermarket window tint or is not visible." This language is substantively the same as that used by Trooper Terry. To the extent Trooper Terry miscited a provision of the manual, he did properly note on the Warning Citation that it was issued pursuant to Section 41-6a-1061(1). Moreover, "a traffic stop is valid, even when the officer cites the wrong statute, if the driver was, in fact, violating the traffic code." *U.S. v. Briscoe*, Case No. 99-2206, 2000 WL 779879, at *3 (10th Cir. June 19, 2000) (unpublished) (citation omitted).

Safety Inspection Manual when the *Rosvall* case was decided nine years ago. What is clear, however, is that the relevant provisions in this case, regarding tinted brake lights, are the same in R714-160-13(8) and the Manual. *Cf* Utah Admin. Code R714-160-13(8)(a)(i)(B) (Gov't Ex. 4) *with* Utah Safety Inspection Manual, § 7, ¶ H(5)(a)(iv) (Gov't Ex. 2); *cf also* Utah Admin. Code R714-160-15(6)(i)(D) *with* Utah Safety Inspection Manual, § 9, ¶ F(1)(a)(iv). Trooper Terry observed that Ms. Meadows' vehicle had a brake light in a rear window, and because that window was tinted, the brake light had a tint over it. Based on that observation, Trooper Terry had probable cause to believe an equipment violation had occurred and grounds to stop Ms. Meadows. The violation was not just in contravention of the Manual, but also in contravention of the Utah Administrative Code and Utah traffic laws. Hence, *Rosvall* is inapplicable.

## II. DECRIMINALIZATION OF UTAH TRAFFIC LAWS

### A. 2017 Amendments to Utah Laws

Ms. Meadows also makes "a facial challenge to Utah's statutory scheme, one that allows an officer to 'stop, inspect, and test' a motor vehicle for a non-criminal offense." Supp. Memo in Support of Mot. to Suppress, at 1 (ECF No. 37). Ms. Meadows contends equipment violations have been decriminalized to something less than an infraction under Section 53-8-209(3), and thus, an equipment violation is not a proper basis for a traffic stop. Section 53-8-209(3) states:

> (3) An owner or driver of a vehicle is not guilty of an infraction and is not required to pay a fee or fine *if* the citation was issued for:
>   . . .
>   (b) a violation of Section . . . 41-6a-1601, . . . or any other equipment related infraction under Title 41, Chapter 6a, Part 16, Vehicle Equipment, *and* the owner or driver obtains a safety inspection, emissions inspection, or proof of repair, as applicable, within 14 days after the citation was issued.

Utah Code Ann. § 53-8-209(3) (emphasis added).

During the 2017 General Session, the Utah Legislature passed H.B. 265, which repealed "the requirement that certain vehicles obtain a safety inspection certificate."[3] 2017 UT H.B. 265, Line 18. Importantly, the bill did not repeal Utah's vehicle equipment requirements; it only repealed the requirement to have vehicles inspected before registration. Absent regular inspections, however, a driver may be unaware if his or her vehicle has an equipment violation.[4] Hence, during the same legislative session, the Utah Legislature also passed S.B. 90.[5]

That bill amended Section 53-8-209 to include the Subsection (3) provisions stated above.[6] Those provisions exempt certain infractions. 2017 UT S.B. 90, Lines 10-11, 13-15. Just as H.B. 265 did not eliminate vehicle equipment requirements, however, S.B. 90 did not legalize violations of those equipment requirements. Equipment violations are still infractions under Section 41-6a-1601(7), but those infractions are exempt from punishment *provided* owners take the necessary steps to correct the violations. *See* Utah Code Ann. § 53-8-209(3)(b). If an equipment violation is not corrected within 14 days, then punishment for the infraction will be imposed. *Id.*; *see also* Utah Code Ann. § 76-3-301(1)(e) (stating the fine for an infraction shall not exceed $750).

---

[3] The modified safety inspection requirements became effective on January 1, 2018, about one month after the traffic stop at issue in this case.

[4] This is similar to the concern expressed by Judge Campbell in *Rosvall*, 651 F. Supp. 2d at 1278.

[5] S.B. 90 became effective on May 9, 2017. The stop at issue in this case occurred on December 4, 2017.

[6] S.B. 90 also amended Section 41-6a-1601(7). The Section previously stated, "A violation of this section is an infraction." S.B. 90 amended it to state, "Subject to Subsection 53-8-209(3), a violation of this section is an infraction." Utah Code Ann. § 41-6a-1601(7). Thus, Sections 41-6a-1601 and 53-8-209 are meant to work together in how infractions are addressed.

Notably, S.B. 90 also did not amend Subsection (1) of Section 53-8-209. That Subsection specifies:

> (1) A peace officer may stop, inspect, and test a vehicle at any time upon reasonable cause to believe that:
>
> (a) a vehicle is unsafe or not equipped as required by law; or
>
> (b) the vehicle's equipment is not in proper adjustment or repair.

Utah Code Ann. § 53-8-209(1). As the United States noted in its briefing, there is a "venerable presumption that an act of a state legislature is generally taken to be constitutional." *Hopkins v. Okla. Pub. Employees Ret. Sys.*, 150 F.3d 1155, 1160 (10th Cir. 1998) (quotations and citation omitted). Applying this principle and reading Section 53-8-209 as a whole, the Utah Legislature authorized peace officers to make stops for equipment violations because those violations were and are infractions under Utah law. Thus, contrary to Ms. Meadows' assertion, the Utah Legislature did not amend the law to allow stops for a "non-criminal offense," and her facial challenge is not well taken.

### B. Instructive Supreme Court and Tenth Circuit Cases

Even if the Utah Legislature had declared that equipment violations are no longer *criminal* infractions, the case of *Arizona v. Johnson*, 555 U.S. 323 (2009) is instructive. In that case, the United States Supreme Court addressed whether an officer could pat down a passenger during a traffic stop. Justice Ginsburg wrote the decision for a unanimous court, which concluded a pat down is permissible when an officer has reasonable suspicion to believe a person is armed and dangerous. *Id.* at 327.

Although the case is about a passenger pat down, the facts are still notable. The officers in *Arizona* made a traffic stop "after a license plate check revealed that the vehicle's registration

had been suspended for an insurance-related violation." *Id.* The Supreme Court referred to the violation as a "traffic infraction." *Id.* at 326. Significantly, "[u]nder Arizona law, the violation for which the vehicle was stopped constituted a *civil* infraction warranting a citation." *Id.* at 327 (emphasis added). Thus, "[i]n making the stop the officers had no reason to suspect anyone in the vehicle of criminal activity." *Id.* Nevertheless, "[t]he Arizona Court of Appeals recognized that, initially [the passenger] was lawfully detained incident to the legitimate stop of the vehicle in which he was a passenger." *Id.* at 332 (citing *State v. Johnson*, 170 P.3d 668, 673 (Ariz. Ct. App. 2007)). And, the Supreme Court said "[a] lawful roadside stop begins when a vehicle is pulled over for investigation of a traffic violation." *Id.* at 333. It did not distinguish between a civil traffic infraction or a criminal traffic infraction. Thus, implicitly, the Supreme Court found the stop was lawful even though it was for a civil traffic infraction.

In the Tenth Circuit case of *United States v. Gonzales*, 535 F.3d 1174, 1182 (10th Cir. 2008), a person was stopped for turning without signaling. Under Colorado law, that constituted "a traffic infraction, not a felony or misdemeanor." *Id.* *Gonzales* is noteworthy because the Tenth Circuit concluded the officer had no legal authority to make the stop since it was made outside of the officer's geographical jurisdiction. *Id.* Even though the officer made the stop in violation of Colorado law, the Tenth Circuit held the violation did not rise to the level of a Fourth Amendment violation. *Id.* at 1183. Indeed, it concluded that it did not need to "examine state law or interests," for that particular case, because "[t]he federal test for determining the validity of a traffic stop simply requires [a court] to determine whether a traffic violation has occurred." *Id.* Accordingly, "[a] stop is valid if it is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic *or equipment violation* has

11

occurred or is occurring." *Id.* at 1181 (quotations and citation omitted) (emphasis added).

In this case, Trooper Terry observed a tint over the third brake light on Ms. Meadows' vehicle. That is an equipment violation under Utah law. Troopers may stop drivers for equipment violations under binding precedent. The stop therefore was lawful, and Ms. Meadows' facial challenge fails.

### III.   TITLE R714 CHALLENGE

Ms. Meadows' next challenge is that Title R714 is invalid because it does not meet Utah's rulemaking requirements. Section 63G-3-202 of the Utah Code states:

> (1) An agency's written statement is a rule if it conforms to the definition of a rule under Section 63G-3-102, but the written statement is not enforceable unless it is made as a rule in accordance with the requirements of this chapter.
>
> (2) An agency's written statement that is made as a rule in accordance with the requirements of this chapter is enforceable and has the effect of law.

Utah Code Ann. § 63G-3-202. Ms. Meadows contends R714 was not made as a rule in accordance with the requirements of Chapter 3. Specifically, she cites to Section 63G-3-201(5)(a), which requires a rule to "enumerate any penalty authorized by statute that may result from its violation." Because R714 does not enumerate any penalty for equipment violations, Ms. Meadows contends the rule was not made properly and does not have the effect of law.

The Utah Supreme Court has stated the State's "statutes, where possible, are to be construed so as to sustain their constitutionality." *State v. Briggs*, 2008 UT 83, ¶ 47, 199 P.3d 935 (quotations and citation omitted). This is so regardless of whether the statute is criminal or civil. *State v. Lopes*, 1999 UT 24, ¶ 18, 980 P.2d 191 (citations omitted). Although Ms. Meadows challenges an Administrative Rule rather than a Utah Statute, both have the force of law. Thus, the court applies the same principle to its interpretation of R714.

As stated in Section I above, the Legislature delegated authority to the Department of Public Safety to "make rules setting minimum standards covering the design, construction, condition, and operation of vehicle equipment for safely operating a motor vehicle on the highway." Utah Code Ann. § 41-6a-1601(2)(a). In that same Section, the Legislature then stated, "a violation of this section is an infraction." *Id.* § 41-6a-1601(7). The Section therefore sets the penalty.

R714 then references Section 41-6a-1601 twice. First, it notes the rule was authorized by Section 41-6a-1601(2). Utah Admin. Code R714-160-1. Second, it states the purpose of the rule is to set minimum equipment standards in accordance with Section 41-6a-1601. Utah Admin. Code R714-160-2. The court interprets these references as providing notice that R714 is operating pursuant to and in accordance with Section 41-6a-1601, including the penalty set forth under Subsection (7). Because R714 furthers the purpose intended by the Legislature and provides adequate notice to the public about the penalty associated with equipment violations, the court concludes it satisfies Utah's rulemaking requirements and "is enforceable and has the effect of law."

## IV. COMMERCE CLAUSE CHALLENGE

Ms. Meadows also contends Utah law may run afoul of the Commerce Clause by treating in-state drivers differently from out-of-state drivers. Ms. Meadows posits the following question: "What if Trooper Terry had issued Ms. Meadows a written notice of her window tint violation instead of a warning? Depending on Colorado law, she may have had no obligation or incentive to bring her vehicle into compliance with Utah law to avoid an infraction." Supp. Memo in Support of Mot. to Suppress, at 4 (ECF No. 37). Consequently, Ms. Meadows

13

continues, out-of-state drivers may have to suffer a penalty in violation of the Commerce Clause, where an in-state-driver would remedy the problem and avoid the penalty "tax."  While Ms. Meadows presents an interesting hypothetical, her hypothetical invites the court to speculate about circumstances not before the court.  The court declines to do so.

Moreover, the Tenth Circuit has acknowledged that "state troopers cannot be expected to possess encyclopedic knowledge of the traffic regulations of other states."  *United States v. Ledesma*, 447 F.3d 1307, 1314 (10th Cir. 2006).  The Commerce Clause therefore focuses on "two sets of burdens:  the erection of actual barriers to interstate movement and being treated differently from intrastate travelers."  *United States v. Eckhart*, 569 F.3d 1263, 1272 (10th Cir. 2009) (quotations and citations omitted).  Ms. Meadows has come forward with no evidence to show "intra-and interstate travelers" are treated differently with respect to equipment violations, and there are no actual barriers at issue.  The court therefore concludes Ms. Meadows has failed to prove a Commerce Clause violation.

## V.  NO EVIDENCE OF POLICE MISCONDUCT

Although the court has rejected Ms. Meadows' legal challenges, even if Ms. Meadows' challenges were valid, the court concludes "the good faith exception to the exclusionary rule" would apply.  *United States v. Vanness*, 342 F.3d 1093, 1097 (10th Cir. 2003).  The Supreme Court has stated that "[u]nless 'a statute is clearly unconstitutional, an officer cannot be expected to question the judgment of the legislature that passed the law.'"  *Id.* (quoting *Illinois v. Krull*, 480 U.S. 340, 349-50 (1987)).  An officer likewise should not be expected to question the judgment of administrative rules when they have gone through formal rulemaking.  Thus, when an officer acts in an objectively reasonable manner based on existing law, the exclusionary rule

serves no purpose because it is not deterring police misconduct.

In this case, Trooper Terry stopped Ms. Meadows based on a Utah law that prohibits tinted brake lights. To the extent any of Ms. Meadows' challenges are valid, the court concludes Trooper Terry acted in an objectively reasonable manner and the exclusionary rule does not apply.

## **CONCLUSION**

For the reasons stated above, the court DENIES Ms. Meadows' Motion to Suppress (ECF No. 19).

DATED this 26th day of November, 2018.

BY THE COURT:

_____
Clark Waddoups
United States District Judge